UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RUBEN PEREZ, MICHAEL MOORE,           No. 2:09-cv-02850-MCE-KJM
and BRIGETTE MOORE

      Plaintiffs,

  vs.                                **ORDER**

VEZER INDUSTRIAL
PROFESSIONALS, INS., a
California Corporation,

      Defendants.
_____/

VEZER INDUSTRIAL
PROFESSIONALS, INC.,

      Third-Party
      Plaintiff,

  vs.

PINPOINT HOLDINGS, INC.,
a corporation; B2 GOLD, a
Canadian corporation,

      Third-Party
      Defendants.
_____/

///

///

1

Plaintiffs seek damages for personal injuries they sustained due to the alleged negligence of a California corporation, Vezer Industrial Professionals, Inc. ("Vezer") while working at a Nicaragua mining site whose construction was being managed by Vezer.  Vezer subsequently brought the owner of the mine, B2 Gold Corporation ("B2 Gold"), into this litigation as a third-party defendant.  B2 Gold, a Canadian company, has now filed the motion presently before the Court (Docket No. 24).  The first portion of that motion seeks dismissal for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).[1]  B2 Gold alternatively seeks dismissal under the common law doctrine of *forum non conveniens*, contending that an adequate forum for redress exists in either Canada or Nicaragua.  For the reasons set forth below, both of B2 Gold's requests will be denied.[2]

**BACKGROUND**

Defendant Vezer is a California corporation with its permanent place of business located in Suisun, California. Beginning in June or July of 2007, Vezer was approached by Central Sun Mining ("Central Sun") for the purchase of $1 million worth of equipment owned by Vezer and then located in the State of Nevada.

///

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] Because oral argument was not determined to be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Local Rule 230(g).

A contract for the purchase of that equipment was subsequently
negotiated over a series of email and telephone communiques
between Central Sun representatives and Vezer's Suisun offices.

Thereafter, in November of 2007, Vezer entered into
additional negotiations with Central Sun for the construction of
a gold mine located in La Libertad, Nicaragua.  Representatives
of Central Sun, Peter Tagliamonte and Graham Spiers, met with
Frank Vezer, President of Vezer, on two occasions at Vezer's
offices in Suisun to negotiate the terms of an agreement.  Each
of those meetings lasted approximately four hours.  A third
meeting then took place, also at Vezer's California offices, to
finalize the necessary arrangements.  This final meeting spanned
approximately sixteen hours during the last two weeks of November
2007 and resulted in an "interim" agreement.  After Graham Spiers
sent a clarifying email on November 28, 2007, a final agreement
was signed by the parties on December 12, 2007.  In accordance
with the agreement, Central Sun purchased tools and equipment
from Vezer in California through individual transactions
negotiated between the Defendant's offices in California and
Central Sun's office's in Nicaragua.  Vezer also agreed to
provide construction support and personnel pursuant to the
agreement.

B2 Gold is the successor-in-interest to Central Sun, having
acquired the company in March 2009.  B2 Gold is a Canadian
company with a principal place of business in Vancouver, Canada.
It does not advertise or own property in California, and it is
not registered with the California Secretary of State.
///

1      Once the aforementioned construction agreement was in place,

2 Plaintiffs Ruben Perez and Michael Moore ("Plaintiffs") were

3 approached by Vezer through another company, Pinpoint Holdings,

4 about working at the mine in Nicaragua.  Perez and Moore, during

5 all times relevant, were residents of Texas and Pennsylvania,

6 respectively.  Plaintiffs were required to reside at the mine for

7 the duration of their work, but were provided transportation

8 services by Vezer.

9      The provision of transportation services ultimately spawned

10 the current litigation.  On October 4, 2008, while being

11 chauffeured in Nicaragua by J.J. Ocon, a driver allegedly

12 employed by a private transportation company selected by Central

13 Sun,[3] the pick-up truck driven by Ocon and occupied by Plaintiffs

14 rolled off a mountain road.  Plaintiffs allege they were injured

15 due to Ocon's negligence and reckless driving.

16      Following commencement of this litigation, Vezer impled B2

17 Gold under Rule 14(a)(1) contending that, under the terms of its

18 agreement with Central Sun, B2 Gold, as Central Sun's successor-

19 in-interest, was obligated to indemnify Vezer for Plaintiffs'

20 personal injury lawsuit.

21      B2 Gold then filed the present motion to dismiss for lack of

22 personal jurisdiction or, alternatively, on *forum non conveniens*

23 grounds.

24 ///

25 ///

26 ///

27

28     [3] Plaintiffs' complaint, on the other hand, alleges that
Ocon was hired by Vezer.  Pls.' Compl., ¶¶ 10-11.

1

**STANDARD**

2

**A.   Motion to Dismiss for Lack of Personal Jurisdiction**

3

4        It is the plaintiff's burden to establish the court's

5   personal jurisdiction over the defendant.  Doe v. Unocal Corp.,

6   248 F.3d 915, 922 (9th Cir. 2001).  The court may consider

7   evidence provided in affidavits in assessing the plaintiff's

8   showing.  Id.  When a district court rules on a motion to dismiss

9   for want of personal jurisdiction without holding an evidentiary

10  hearing, "the plaintiff need make only a prima facie showing of

11  jurisdictional facts to withstand the motion to dismiss."  Id.

12  (citing Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995)).

13  Additionally, in circumstances where the facts are not directly

14  controverted, the plaintiff's account is taken as true for the

15  purposes of a 12(b)(2) motion to dismiss and when conflicts do

16  arise, they must be resolved in the plaintiff's favor.  Id.

17       A federal court may only exercise jurisdiction over a

18  defendant if it "comport[s] with the state['s] long arm statute."

19  Omeluk v. Langsten Slip & Batbyggerie A/S, 52 F.3d 267, 269 (9th

20  Cir. 1995).  California statute permits courts to hear any

21  dispute that is not inconsistent with Constitutional due process

22  requirements.  See, e.g., Bancroft & Masters, Inc. v. August

23  Nat'l Inc., 233 F.3d 1082, 1086 (9th Cir. 2000); Cal Code Civ.

24  Proc. § 410.10.  Therefore, federal courts within California "may

25  exercise jurisdiction to the fullest extent permitted by due

26  process."  Scott v. Breeland, 92 F.2d 925, 927 (9th Cir. 1986).

27  ///

28  ///

5

In order to subject a defendant to *in personam* jurisdiction, he must be placed on notice that he may be haled before a court in the forum.  See, e.g., World-Wide Volkswagen v. Woodson, 444 U.S. 286 (1980).  This requires that the defendant maintain such "minimum contacts" with the forum that maintenance of the suit against the defendant does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

The Ninth Circuit Court of Appeals applies a three-part test to ascertain whether exercise of specific jurisdiction over a defendant comports with Constitutional requirements:

> "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefit and protection of its laws;
>
> (2) [T]he claim must be one which rises out of or relates to the defendant's forum related activities;
>
> (3) [T]he exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable."

Boschetto v. Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008) (citing Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987).  The plaintiff bears the burden of establishing the first two prongs. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).  If the plaintiff meets this requirement, the burden "then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Id. at 802 (citing Burger King v. Rudzewicz, 471 U.S. 462 (1985)).

6

1  A presumption of reasonableness exists when there has been a

2  showing that the defendant "purposefully directed [its]

3  activities at forum residents."  <u>Haisten v. Grass Valley Medical</u>

4  <u>Reimbursement Fund, Ltd.</u>, 784 F.2d 1392 (9th Cir. 1986) (citing

5  <u>Burger King</u>, 471 U.S.).

6      General jurisdiction, on the other hand, exists in

7  circumstances where the defendant's contacts are "substantial" or

8  "continuous and systematic."  In such instances, the defendant

9  may be haled before a court in the forum in any action,

10 regardless of whether the action is related to those contacts.

11 <u>Bancroft & Masters, Inc. v. Augusta Nat. Inc.</u>, 223 F.3d 1082,

12 1086 (9th Cir. 2000).  The court noted that the standard for

13 establishing such jurisdiction is "fairly high," requiring the

14 defendant's contacts to be those that "approximate physical

15 presence."  <u>Id</u>. (quoting <u>Brand v. Menlove Dodge</u>, 796 F.2d 1070,

16 1073 (9th Cir. 1986).

17

18 **B.   Motion to Dismiss for *forum non conveniens***

19

20     The common law doctrine of *forum non conveniens* allows a

21 court to decline to exercise jurisdiction over a dispute when the

22 convenience of the parties so dictates.  <u>See</u> <u>Gulf Oil Corp. v.</u>

23 <u>Gilbert</u>, 330 U.S. 501 504 (1947).  Granting such a motion results

24 in the dismissal of the litigation.  When a suit is brought

25 before the court that should have been brought elsewhere, and the

26 court does not have the power to transfer the suit to the foreign

27 jurisdiction, the lawsuit may properly be dismissed.

28 ///

1  See Contact Lumber Co. v. P.T. Moges Shipping Co., Ltd., 918 F.2d

2  1446, 1448-49 (9th Cir. 1990).

3      A *forum non conveniens* dismissal will "ordinarily be

4  appropriate where trial in the plaintiff's chosen forum imposes a

5  heavy burden on the defendant or the court, and where the

6  plaintiff is unable to offer any specific reasons of convenience

7  to support his choice." Piper Aircraft Co. v. Reyno, 454 U.S.

8  235, 249 (1981). The moving party has the burden of proving, and

9  the court must consider: (1) the existence of an adequate

10 alternative forum, and (2) that the balance of public and private

11 factors favor dismissal. Loya v. Starwood Hotels & Resorts

12 Worldwide, Inc., 583 F.3d 656 (9th Cir. 2009). The required

13 showings by the moving party must "overcome the great deference

14 due to plaintiffs because a showing of convenience by a party who

15 has sued in his home forum will usually outweigh the

16 inconvenience the defendant may have shown." Id. at 664.

17     When deciding a *forum non conveniens*-based motion, a U.S.

18 citizen's choice of forum, while not dispositive, is given "great

19 deference." Contact Lumber, 918 F.2d at 1449. Despite the

20 deference accorded a citizen plaintiff, if the court determines

21 that "the balance of conveniences suggest that trial in the

22 chosen forum would be unnecessarily burdensome for the defendant

23 or the court, dismissal is proper." Contact Lumber, 918 F.2d at

24 1449 (quoting Piper Aircraft, 454 U.S. at 256 n.23).

25 ///

26 ///

27 ///

28 ///

8

**ANALYSIS**

**A.   Motion to Dismiss for Lack of Personal Jurisdiction**

**1.   General Jurisdiction**

Neither Vezer nor Plaintiffs contend that the acts of B2 Gold meet the threshold for general jurisdiction.  In determining whether the defendant's activities are "continuous and systematic" or "substantial," for purposes of confirming general jurisdiction, courts look to whether "the defendant solicits or engages in business, serves the states markets, designates an agent for service of process, holds a license, has employees, or is incorporated there."  Hirsch v. Blue Cross, Blue Shield of Kansas City, 800 F.2d 1474, 1478 (9th Cir. 1986).

B2 Gold is neither authorized nor licensed to do business in California.  B2 Gold's Mot. Dismiss, p. 2.  It has not registered with the State's Secretary of State nor has it designated an agent of service in the forum.  Id.  Moreover, it does not maintain offices, hold any bank accounts, or advertise within the state.  Id.  Without such contacts, the higher standard required to impose general jurisdiction is not met.  Bancroft & Masters, Inc., 233 F.3d.  As a consequence, this Court cannot assert general jurisdiction over B2 Gold.  See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408 (1984).

///
///
///
///
///

## 2.   Specific Jurisdiction

Despite the absence of general jurisdiction over B2 Gold, Vezer nonetheless argues that B2 Gold, through its predecessor in interest, Central Sun, conducted activities in California that satisfy the purposeful availment requirement necessary to confer specific jurisdiction under the facts of this case.  Vezer Opp., p. 7.  In support of this contention, Vezer argues that B2 Gold came to California to negotiate the sale of over $1 million worth of mining equipment located in Nevada.  Id. at 4.  Following the sale of that equipment, B2 Gold's representatives traveled to California to meet with Vezer on three separate occasions.  After negotiations spanning some twenty-four hours, B2 Gold agreed to a contract whereby Vezer would provide services for the construction of the mine owned by B2 Gold in Nicaragua.  Frank Vezer Decl. ¶ 4.  Defendants further argue that daily communications were maintained between B2 Gold and Vezer in California to execute the various provisions contained within the contract.  Vezer Opp., p. 4.

Vezer also argues that it was foreseeable that B2 Gold could be haled before a tribunal in California due to the existence of an indemnity agreement, under the terms of which B2 Gold would insulate Vezer from any claims arising out of the conduct of Central Sun's "agents, employees and contractors."  Vezer Opp., p. 8.

///

///

///

1    The Constitution mandates that a defendant have some notice

2    before being haled before a court in a particular forum.  See,

3    e.g., World-Wide Volkswagen, 444 U.S.  To assure this, due

4    process requires that the defendant have "certain minimum

5    contacts with [the forum] such that the maintenance of the suit

6    does not offend 'traditional notions of fair play and substantial

7    justice.'"  Helicopteros, 466 U.S. at 414.  The Supreme Court has

8    "bifurcated this due process determination into two inquiries,

9    requiring, first, that the defendant have the requisite contacts

10   with the forum state to render it subject to the forum's

11   jurisdiction, and second, that the assertion of jurisdiction be

12   reasonable."  Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.,

13   1 F.3d 848, 851 (9th Cir. 1993).

14   The critical factor in assessing whether the defendant has

15   established minimum contacts is that there be "some act by which

16   the defendant purposefully avails itself of the privileges of

17   conducting activities within the forum State, thus invoking the

18   benefits and protections of its laws."  Hanson v. Denckla,

19   357 U.S. 235, 253-54 (1958) (citing International Shoe, 326 U.S.

20   at 319).  A purposeful availment analysis most often arises in

21   "suits sounding in contract."  Schwarzenegger, 374 F.3d at 802;

22   See also Boschetto v. Hansing, 539 F.3d 1011 (9th Cir. 2009).  In

23   Schwarzenegger, the court concluded that a defendant purposefully

24   avails himself of the privileges and protections that a forum

25   affords by a showing that he, for example, "execut[ed] or

26   perform[ed] a contract there."  Id.

27   ///

28   ///

11

In return for the benefits associated with the benefits and protections of a forum's laws, "a defendant must...submit to the burdens of litigation in that forum." Id. (quoting Burger King, 471 U.S. at 476).  It is important to note that the formation of a contract alone is not sufficient to establish jurisdiction. See Burger King, 471 U.S. at 478.  The Supreme Court stressed the necessity "for a highly realistic approach," acknowledging that a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the transaction." Id. at 479. The question cannot turn on the quantitative number of contracts alone, and "even a 'singe act' by the defendant can support jurisdiction, but only if that act creates a 'substantial connection' with the forum." Boschetto, 539 F.3d at 1017 n.3 (quoting Burger King, 471 U.S. at 476 n. 18); McGee v. Int'l Life Ins. Co., 335 U.S. 220 (1957); cf. Travelers Health Ass'n v. Commonwealth of Va., 339 U.S. 643, 647 (1950) (finding purposeful availment when "business activities reach out beyond one state and create continuing relationships and obligations").

In the instant case, the contractual relationship between Vezer and B2 Gold cannot be characterized as a "one-shot affair." Boschetto, 539 F.3d at 1017 (citing CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1265 (6th Cir. 1996).  To the contrary, B2 Gold entered into complex contract negotiations with a California company that themselves created continuing and substantial obligations.

///

///

12

1    B2 Gold nonetheless argues that because of contractual

2  provisions expressly stating that the laws of Ontario, Canada,

3  will govern the parties' agreement, neither B2 Gold or its

4  predecessor-in-interest availed themselves of California's law

5  and privileges.  B2 Gold's Mot. Dismiss, pp. 5-6.  The Supreme

6  Court has upheld the validity of forum selection clauses which

7  require specific forums to hear disputes arising from certain

8  transactions or specific parties.  See Carnival Cruise Lines,

9  Inc. v. Shute, 499 U.S. 585 (1991).  Had Vezer and B2 Gold agreed

10 to such a stipulation, there is no question that this court would

11 be required to dismiss the action pursuant to the freely

12 negotiated terms of the parties.  Id.  The parties, however, did

13 not agree to a forum selection clause but, rather, a choice of

14 laws clause.  As articulated by the Supreme Court, the choice of

15 laws clause has subordinate importance in personal jurisdiction

16 inquiries.  Denckla, 357 U.S. at 254.

17    Under the analysis set forth above, B2 Gold's contacts with

18 California are sufficient to establish specific jurisdiction.

19 Its representatives visited California on three occasions and

20 maintained consistent telephone and electronic communication with

21 Vezer.  Moreover, it entered into a contract which created

22 substantial obligations with a company headquartered within

23 California.  This brings the case squarely within the province of

24 Data Disc, Inc. v. Systems Technology Associates, 557 F.2d 1280

25 (9th Cir. 1977). In Data Disc, the court found personal

26 jurisdiction because "at least some of the negotiations took

27 place" in the forum, concluding that the defendant purposefully

28 availed itself of the privileges and protections of the state.

13

1    Id. at 1284.  Although the underlying cause of action is a tort

2    claim alleging personal injuries, the contract negotiation

3    undertaken by B2 Gold in the State of California establishes the

4    requisite contacts.

5         Both Vezer and B2 Gold cite the "but for" test applied in

6    the Ninth Circuit to determine whether a particular claim arises

7    out of forum-related activities.  This test requires that Vezer

8    show it would not have any claims against B2 Gold "but for" the

9    latter's forum related conduct.  See, e.g., Ballard v. Savage,

10   65 F.3d 1495 (9th Cir. 1995) (citing Shute v. Carnival Cruise

11   Lines, 897 F.2d 377 (9th Cir. 1990), rev'd on other grounds,

12   499 U.S. 585 (1991).  Although both parties cite the "but for"

13   test in their briefs, they come to different conclusions

14   regarding its application.  Vezer argues that but for the

15   agreement, it would not have conducted operations in Nicaragua,

16   from which the current litigation is a direct result.  Vezer

17   Opp., 8.  Therefore, asserts Vezer, the view that there is "no

18   causal connection" between B2 Gold's contacts with California and

19   the current litigation is "entirely misplaced."  Id.  Conversely,

20   B2 Gold argues that the activities are "too attenuated" to

21   satisfy the "but for" test," and cites in support of Doe v.

22   American Nat'l Red Cross, 112 F.3d 1048 (9th Cir. 1997).  B2

23   Gold's Mot. Dismiss, 7.

24        It is evident that "but for" B2 Gold's above-described

25   activities in California, Vezer would not have conducted any

26   operations in Nicaragua, and would not now be a defendant in a

27   personal injury claim arising therefrom.

28   ///

B2 Gold's reliance on <u>Doe v. American Nat'l Red Cross</u>, <u>supra</u>, is misplaced because that decision raised an entirely different question:  whether a government employee involved in the regulatory process, and only peripherally involved in the flow of products into a state, may be haled before a court in that state. 112 F.3d at 1051.  Holding that the government employee was not so exposed, the <u>Red Cross</u> court concluded that his contacts with the forum were too attenuated for him "to believe that his role in the regulatory process would expose him to the power of the courts in Arizona." <u>Id</u>.  Far from being a government employee involved in the regulatory process, B2 Gold traveled to the California three times to conduct lengthy contractual negotiations and ultimately entered into a contract for both services and equipment purchased from a California company.  This litigation resulted directly from those negotiations; consequently, B2 Gold was on notice that it could be haled before a California court.

Vezer having established that B2 Gold maintained sufficient contacts with California, and having demonstrated for jurisdictional purposes and that the litigation is a result of those forum-related activities, the burden now shifts to B2 Gold to assert that the exercise of such jurisdiction would be unreasonable. <u>Schwarzenegger</u>, 374 F.3d.  Vezer contends that B2 Gold has not met "its heavy burden of establishing that exercising jurisdiction over it would be unreasonable in this case." Vezer Opp., 9.

///

///

1   Defendant further contends that because B2 Gold was able to
2   travel to California on multiple occasions to advance its
3   business interests, its argument that it has no presence in
4   California should not be given considerable weight.  Id.  Vezer
5   also points out that if B2 Gold was able to transport its
6   employees to and from a mine located in Nicaragua, there would be
7   no overwhelming burden in transporting witnesses to a California
8   courtroom.  Finally, Vezer asserts that California has
9   identifiable interests in adjudicating this matter, arguing that
10  Defendant is a California company that is entitled to the
11  protections of its laws and that California has an interest in
12  ensuring that B2 Gold adheres to its contractual obligations.

13      B2 Gold argues, on the other hand, that this Court should
14  apply the reasonableness standard more loosely in light of the
15  fact that it is a foreign corporation based in Canada.  B2 Gold's
16  Mot. Dismiss, p. 8.  In support of this contention, B2 Gold cites
17  Core-Vent Corp. v. Nobel, Industries AB, 11 F.3d 1482, 1489 (9th
18  Cir. 1993), wherein the court held that litigation involving a
19  foreign defendant establishes "a higher jurisdictional barrier
20  than litigation against a citizen from a sister state."  B2
21  Gold's Mot. Dismiss, pp. 8-9.  Similarly, B2 Gold references the
22  same conclusion in Asahi Metal Indus. Co. v. Superior Court of
23  Cal., 480 U.S. 102, 115 (1987), where the Supreme Court stated
24  that "great care and reserve should be exercised when extending
25  our notions of personal jurisdiction into the international
26  field."  Id.
27  ///
28  ///

16

1 Additionally, B2 argues that California has no legitimate

2 interest in adjudicating the dispute because the Plaintiffs are

3 not state residents and the accident occurred in Nicaragua.  B2

4 Gold's Mot. Dismiss, pp. 8-9.

5      In evaluating whether exercising jurisdiction over a

6 defendant comports with notions of "fair play and substantial

7 justice," the court must consider seven factors: (1) the extent

8 of defendant's purposeful interjection into the forum state's

9 affairs; (2) the burden on defendant in defending in the forum;

10 (3) the extent of conflict with the sovereignty of the

11 defendant's state; (4) the forum state's interest in adjudicating

12 the dispute; (5) most efficient judicial resolution of the

13 controversy; (6) the importance of the forum to plaintiff's

14 interest in convenient and effective relief; and (7) the

15 existence of an alternative forum.  Core-Vent, 11 F.3d at 1487.

16 No single factor is dispositive and all seven must be balanced.

17 Id. (citing Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir.

18 1991).)  In considering these factors as applied to the facts of

19 this case, it is evident that exercising jurisdiction over the

20 defendant is proper and B2 Gold has not met its burden.

21      Sovereignty concerns are taken into greater consideration

22 when the foreign defendant has no United States-based

23 relationships.  Id. at 1489; see also Asahi, 480 U.S. at 112-113.

24 In considering the weight of the burden on B2 Gold, the Ninth

25 Circuit has held that "continuing contacts" with entities within

26 the forum "translate into less of a litigation burden" than if

27 none existed.  Id. at 1488.

28 ///

The repeated negotiations, communications, and services contract executed by the two parties here must reduce the weight of this factor.  In the instant case, B2 Gold had a contractual relationship with the forum-based defendant that was executed after several trips into the forum to negotiate.  Consequently, this factor cannot weigh heavily in declining the exercise of jurisdiction.

B2 Gold has also failed to establish that California does not have an interest in adjudicating this controversy.  California has a strong interest in protecting its residents when they are involved in litigation within the state.  See Sinatra v. National Enquirer, Inc., 854 F.2d 1191 (9th Cir. 1988).  Given the factors considered above, it would not violate notions of fair play and substantial justice to exercise jurisdiction over B2 Gold.

### B.    Motion to Dismiss for *forum non conveniens*

B2 Gold alternatively asserts that even if the Court decides that personal jurisdiction is present, it should dismiss the matter pursuant to the common law doctrine of *forum non conveniens*.  B2 Gold's Mot. Dismiss, p. 9.  In support of that contention, B2 Gold argues that Canada or Nicaragua are suitable alternative forms.  Additionally, B2 Gold cites that location of witnesses and evidence in Nicaragua and Canada, and that holding trial in this forum would be expensive.  Moreover, because the contractual terms are governed by Canadian law, B2 Gold maintains it would be more logical to hold the trial before a Canadian tribunal.

1    Vezer argues in response that B2 Gold has not met its burden
2    in establishing that an adequate alternative forum exists.  Vezer
3    Opp., p. 14.  According to Vezer, B2 Gold has not pointed to a
4    remedy nor addressed the statute of limitations which may bar
5    such a claim in the suggested alternative forums.  Id.
6    Additionally, Vezer points to the fact that the issue in dispute
7    is a personal injury claim, not a matter of contractual
8    interpretation, and the choice of laws clause should accordingly
9    not weigh heavily in this consideration.
10    The Court finds Vezer's arguments to be more compelling.  A
11   party seeking dismissal on a *forum non conveniens* grounds must
12   establish: (1) the existence of an adequate alternative forum;
13   and (2) that the balance of relevant private and public interests
14   factors favor dismissal.  Creative Technology, Ltd. v. Aztech
15   System Pte., Ltd., 61 F.3d 696 (9th Cir. 1995) (citing Contact
16   Lumber, 918 F.2d at 1449).  The first step in the analysis is
17   whether an alternative forum exists, the key determination being
18   whether "the remedy provided by the alternative forum is so
19   clearly inadequate or unsatisfactory that it is no remedy at
20   all."  Id. at 699 (citing Piper Aircraft Co. v. Reyno, 454 U.S.
21   235, 254 (1981)).  This requirement is typically met "if the
22   defendant is amenable to service of process in the alternative
23   forum."  Id. at 701; see also Yang v. M/V Minas Leo, 76 F.3d 391
24   (9th Cir. 1996).  The Supreme Court has, however, cited "rare
25   circumstances" where the remedy provided in the alternate forum
26   is "clearly unsatisfactory."  Id.  As an example, the Court cited
27   instances where a forum does not permit litigation on the issue
28   in dispute.  Id.

1  The burden of showing the existence of an adequate alternative

2  forum is solely the defendant's and "the remedy must be clear

3  before the case will be dismissed."  Lockman Foundation v.

4  Evangelical Alliance Mission, 930 F.2d 764, 768 (9th Cir. 1991)

5  (quoting Cheng v. Boeing Co., 708 F.2d 1406, 1411 (9th Cir.

6  1983)).

7  B2 Gold has failed to meet its burden of production in

8  establishing the existence of an alternative forum in either

9  Canada or Nicaragua.  As an initial matter, B2 Gold does not

10  provide sufficient evidence to satisfy even the threshold

11  requirement created by the Court in Piper Aircraft: whether it is

12  amenable to service in the alternative forum.  454 U.S. at 254.

13  Moreover, B2 Gold makes only conclusory assertions that Canada is

14  an adequate alternative forum because it is a Canadian company,

15  and that Nicaragua is an adequate alternative forum because the

16  accident took place there.  B2 Gold's Mot. Dismiss, p. 10.

17  B2 Gold has failed to establish that either Canada or Nicaragua

18  provide "some potential avenue for redress."  Ceramic Corp. of

19  America v. Inka Maritima Corp. Inc., 1 F.3d 947 (9th Cir. 1993).

20  For the reasons stated above, B2 Gold has not met its burden of

21  production on the existence of an adequate alternative forum.

22  B2 Gold fares no better in an analysis of the public and

23  private interest factors to be weighed in a forum non conveniens

24  motion.  See Creative Technology, 61 F.3d 696 at 703.  B2 Gold

25  asserts that "none of the relevant witnesses reside" in

26  California and that "all of the physical evidence is in

27  Nicaragua."  Additionally, B2 Gold argues that it would be very

28  expensive to transport the witnesses from Canada and Nicaragua.

1   B2 Gold also contends that because the accident did not occur

2   here and the plaintiffs do not reside here, public factors weigh

3   in favor of dismissal.  Finally, B2 Gold maintains that because

4   the contract is to be interpreted according to Canadian law,

5   private interest factors weigh in favor of dismissal.

6       Vezer counters by arguing there is no reason why this Court

7   is not capable of applying Canadian law should the need arise.

8   Vezer Opp., p. 14.  Vezer argues that private interests favor

9   this forum because it is a California resident, and maintains

10  that Canada is no more convenient than California because many of

11  the witnesses involved were either working at the mine in

12  Nicaragua or were residents of Nicaragua.  Additionally, Vezer

13  argues that the public interest favors retaining the matter in

14  this Court because there is no evidence of any conflicts of law

15  between Canada and the United States.  Id.

16      The Supreme Court has provided the district courts with a

17  list of private and public factors to consider in a motion to

18  dismiss for *forum non conveniens*.  Gulf Oil Corp., 330 U.S. at

19  508-509.  Additionally, a district court considering such a

20  motion must decide whether the moving party has established "such

21  oppression and vexation of a defendant as to be out of proportion

22  to plaintiff's convenience, which may be shown to be slight or

23  nonexistent."  Boston Telecommunications Group, Inc. v. Wood,

24  588 F.3d 1201 (9th Cir. 2009) (quoting Dole Food Co. V. Watts,

25  303 F.3d 1104, 1118 (9th Cir. 2002).

26  ///

27  ///

28  ///

21

The private interest factors to be considered include:
(1) the residence of the parties and witnesses; (2) the forum's
convenience to the litigants; (3) access to physical evidence and
other sources of proof; (4) whether unwilling witnesses can be
compelled to testify; (5) the cost of bringing witnesses to
trial; (6) the enforceability of the judgment; and (7) any
practical problems or other factors that contribute to an
efficient resolution. Tuazon v. R.J. Reynolds Tobacco, 433 F.3d
1163, 1181 (9th Cir. 2006); see also Loya, 583 F.3d at 664. The
Plaintiffs point out in their brief that much of the necessary
information is not located in Nicaragua or Canada, but in the
United States. Plaintiffs' Resp., 8. This includes, *inter alia*,
Plaintiffs' medical records and bills regarding their medical
care following the incident, Plaintiffs' employment records,
Plaintiffs' legal representation; documentation regarding mine
operations and procedures; and various experts. Id. B2 Gold
does not assert which witnesses would be unduly inconvenienced,
strained by having to travel to this forum, nor does it cite what
evidence will be difficult to obtain or reproduce should
litigation proceed in California. Additionally, the significant
costs that will be associated with having to translate documents
from English into Spanish, should the matter be dismissed and
refiled in Nicaragua, must be considered.

The critical inquiry is not the number of witnesses or
quantity of evidence in each locale. Instead, the Court must
determine the "materiality and importance of the anticipated
evidence and witness' testimony and then determine their
accessibility and convenience to the forum."

22

1   <u>Tuazon</u>, 433 F.3d at 1181.  As the Ninth Circuit explained in

2   <u>Tuazon</u>, any court will face administrative challenges when

3   acquiring evidence from abroad.  <u>Id</u>.  In the instant case, the

4   Plaintiffs' medical records and Vezer's files are in the United

5   States, B2 Gold's files are in Canada; and the accident site is

6   in Nicaragua.  In such circumstances, where evidence may exist in

7   multiple locations, it would be far more efficient to relocate

8   individual witnesses to this forum than to force the entire trial

9   to relocate to either Nicaragua or Canada and begin the process

10  over again.

11      B2 Gold has also presented no evidence as to whether a

12  judgment of a Nicaraguan court would be enforceable in the United

13  States.  Additionally, even assuming that Canada is a more

14  convenient forum for B2 Gold, the Plaintiffs have chosen a forum

15  based on the location of the principle defendant, Vezer.  This

16  factor must weigh against dismissing the action and, on balance,

17  the private interest factors weigh against dismissal.

18      The five public interest factors for the Court to consider

19  in a *forum non conveniens* motion are: (1) the local interest in

20  the lawsuit; (2) the court's familiarity with the governing law;

21  (3) the burden on local courts and juries; (4) congestion in the

22  court, and (5) the costs of resolving a dispute unrelated to a

23  particular forum.  <u>Tuazon</u>, 433 F.3d at 1181-1182.

24      As previously established, California has a significant

25  interest in the litigation because it is the home to the primary

26  defendant.  Additionally, as the <u>Tuazon</u> court observed, juries

27  "routinely address subjects that are totally foreign to them."

28  <u>Id</u>.

The matter before this Court is a personal injury claim, an issue that is not alien to American juries.  Additionally, without any evidence suggesting otherwise, this Court cannot assume that the congestion faced by Canadian or Nicaraguan courts is any greater or smaller a burden than that faced by this court.  As a consequence, the public interest factors also weigh against dismissal here on *forum non conveniens* grounds.

## CONCLUSION

For the foregoing reasons, Third-Party Defendant B2 Gold's 12(b)(2) Motion to Dismiss (Docket No. 24) is DENIED.  B2 Gold's alternative request for dismissal on grounds of *forum non conveniens* (also contained within Docket No. 24) is also DENIED.

IT IS SO ORDERED.

Dated: July 23, 2010

MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

24