IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RUBEN PEREZ et al.,

    Plaintiffs,

vs.

VEZER INDUSTRIAL PROFESSIONALS, INC.,

    Defendant.

No. CIV S-09-2850 MCE CKD

<u>ORDER</u>

        This diversity action arises in connection with an automobile accident that occurred on or about October 5, 2008 in Nicaragua. Before the court is plaintiffs' motion to compel discovery responses (dkt. no. 114), which came on regularly for hearing on November 16, 2011. Robert Luke and Tony Coveny appeared on behalf of plaintiffs. Joseph Owens appeared on behalf of defendant Vezer Industrial Professionals, Inc. Lisa Estabrook appeared on behalf of third-party defendants Central Sun Mining, Inc. and B2 Gold. Upon review of the documents in support of and in opposition to the motion, upon hearing the arguments of counsel, and good cause appearing therefor, the court now issues the following order.

\\\\

\\\\

BACKGROUND

### Facts Giving Rise to the Litigation

The background facts are taken from the operative First Amended Complaint (dkt. no. 116) and the parties' joint statement (dkt. no. 120), unless otherwise indicated. In September 2008, plaintiffs, who are millwrights, were contacted by Pinpoint Holdings, Inc. ("Pinpoint"), an employment agency, regarding contracting work defendant Vezer Industrial Professionals, Inc. ("Vezer") was performing at a gold mine in a remote section of the Nicaraguan mountains. The mine was owned by Central Sun Mining, Inc. ("Central Sun"). Central Sun's successor in interest is B2 Gold, but the parties' submissions do not specify when this succession took place. According to plaintiffs, Vezer promised to provide lodging, food, and transportation in addition to a monthly wage and travel allowance in return for plaintiffs' specialized labor at the mine.

On the evening of October 4, 2008, plaintiffs were driven into town for dinner. Later that evening, plaintiffs were picked up by a driver named JJ "Satan" Ocon ("Ocon"). In the early morning hours of October 5, 2008, the truck in which plaintiffs were transported swerved off the road and hit the embankment, injuring plaintiffs. The cause of the accident is in dispute. Plaintiffs allege that Ocon overloaded the vehicle and drove recklessly, at an excessive speed, and while under the influence of alcohol. Vezer contends that plaintiffs instructed Ocon to drive them and 12 local townspeople first to a gas station to purchase liquor and food, and then to a discotheque in another town. When Ocon objected to transporting such a large number of people, including non-workers, in the overloaded truck and insisted that they return to the mine, plaintiffs threatened to have Ocon fired, and Ocon ultimately acquiesced.

On July 17, 2009, plaintiffs filed their original complaint in the Solano County Superior Court, and the action was later removed to this court. The operative first amended complaint contains causes of action for: (1) negligence; (2) negligent hiring, retention, training, and supervision; and (3) negligent undertaking against Vezer. (Dkt. No. 116.) The primary questions in this action appear to be who caused the accident, and to the extent that Ocon was

responsible, what responsibility Vezer has for Ocon's conduct.  Therefore, a key issue is whether Ocon was acting under the direction and control of Vezer when the accident occurred.  Plaintiffs contend that Vezer supplied the vehicles and drivers for trips both within and outside the mine.  They also allege that Ocon was a special employee of Vezer, with Vezer controlling his job by making the rules, scheduling the drivers, and directing the drivers' activities.  Vezer disputes these allegations and claims that the driver was instead employed by Aubert Transportation ("Aubert"), a local transportation company, which had contracted with Central Sun to provide transportation to workers at the mine.

<u>Background to the Discovery Dispute</u>

Plaintiffs propounded three sets of document requests to Vezer; the first on August 3, 2010, the second on February 15, 2011, and the third on June 13, 2011.  Vezer served its responses to the first set on October 19, 2010 and produced responsive documents along with its initial disclosures on October 25, 2010.[1]  In response to each of plaintiffs' approximately 120 requests for production, Vezer asserted the following objections:

> Defendant objects to this request on grounds that it is vague, ambiguous and unintelligible, overbroad, and seeks documents not calculated to lead to the discovery of evidence admissible at trial.

Nevertheless, Vezer stated that it would produce documents responsive to certain requests, and indicated that there were no responsive documents to the remaining requests.  Vezer produced the following documents in total: a contract between Central Sun and Aubert (V001-003); a purchase order from Vezer to Pinpoint (V004-008); an accident report by Central Sun (V009-011); an accident report by the national police (V012-014); four photographs of the accident site (V015-019); a document regarding Central Sun light vehicle traffic procedures (V020-025); a document with six handwritten names dated August 21 (V026); an "ESG Employee Information Sheet" (V027-029); a Central Sun/Vezer pamphlet (V030-043); witness statements (V044-055);

---

[1] The parties' submissions do not indicate whether any documents were produced in response to the second and third sets of document requests.

1  and an insurance policy.

2  Although the instant motion was initially labeled as a motion to compel, plaintiffs' principal contention now is that Vezer failed to preserve documents, and in particular electronically stored information ("ESI"), related to this case.  To support that contention, plaintiffs rely on documents produced by third parties and deposition testimony by Vezer executives.  With respect to third party production, plaintiffs primarily refer to three e-mails between Central Sun and Vezer executives related to the accident that had been produced by Central Sun and not by Vezer. (See Dkt. No. 120, Ex. C.)  Plaintiffs also note that Vezer failed to produce a copy of the "Rules of Conduct for Vezer Employees in Nicaragua" which was created a few days after the accident. (Dkt. No. 120, Ex. G.)  Furthermore, on September 22, 2011, plaintiffs deposed Z.K. Zarif, a former Vezer executive who had significant involvement with Vezer's operations at the mine and handling of the accident.  Mr. Zarif ceased working for Vezer in April 2010.  He testified that he did not search for documents on his computer related to this case before he left Vezer, and that any such documents were lost when his computer subsequently crashed.  Mr. Zarif also noted that he did not back up his computer files. (Dkt. No. 120, Ex. X, at 90:10-93:5.)  Additionally, on October 11, 2011, plaintiffs deposed Frank Vezer, Vezer's owner.  In the course of the deposition, Mr. Vezer was asked about the ESI on his computer:

> Q. Other than the printouts that you've produced of the contracts and things like that, the electronic data, not the paper data, the electronic data is all gone; is that what you're saying?
> A. I don't -- I don't know where it's at.
> Q. Have you looked for it?
> A. Occasionally I've wanted to go back and refer and look to something, and I -- I don't have it anymore in my computer.
> Q. Was the data --
> A. It's real simple.  I had several computers.  I never felt that we had any liability in this accident, and I was concerned about the contract.  I talked mostly with Z.K. Zarif over the telephone.  Most of my communication was that way, dealing with him on a day-to-day basis.  And yes, I've used some e-mails in and out.  I don't know what I have or

>anything else, but by the time this -- it's three years ago. That stuff is just long gone, either lost with the computer when my computers crash or when I have changed out the computers for a new upgrade, and it went to one of my other staff, and then they get laid off and the computer is gone. I don't know. But I don't -- you have what we have right now, and that's as far as we can go with these questions.

(Dkt. No. 120, Ex. S, at 42:5-43:4.)

The parties' joint statement identifies several categories of documents that plaintiffs allege at one point existed, but have not been produced. The parties' contentions with respect to these categories are briefly summarized below.

### *E-mails Between Zarif and Frank Vezer Concerning the Accident*

Plaintiffs argue that Vezer produced no e-mails between Zarif and Mr. Vezer related to the accident. Vezer contends that Mr. Vezer only spoke with Zarif by telephone regarding the accident and that there is no evidence of any e-mails between them on the subject. According to the deposition transcripts submitted along with the joint statement, neither Zarif nor Mr. Vezer recalls e-mails between them in the aftermath of the accident. (See Dkt. No. 120, Ex. N, at 32:10-34:6, Ex. X, at 91:23-92:25.) Although Mr. Vezer testified that he prefers phone communications, he admitted to using at least some e-mail in 2008, and Zarif testified that he had exchanged e-mail with Mr. Vezer during the prior negotiation of the mining contract. (Dkt. No. 120, Ex. M, at 43:24-45:3, Ex. O, at 34:1-35:4.)

### *Financial Records Dealing With Operations in Nicaragua Such As Who Paid the Drivers or the Plaintiffs' Medical Expenses*

In response to plaintiffs' claim that no responsive records were produced, Vezer states that it simply does not have any documents related to payment of the drivers. It points to Mr. Vezer's testimony that it was B2Gold/Central Sun who paid the drivers. (Dkt. No. 121, Ex. B, at 81:1-17.) Vezer also argues that witnesses have already testified that plaintiffs' medical expenses were paid up front by Vezer's insurance.

### *Documents Concerning the Contracting for Transportation at the Mine and Who Was Responsible for Controlling the Drivers*

Plaintiffs state that many of the terms of the contract were in e-mails that were not produced. Vezer responds that it has already produced a copy of the actual contract between Central Sun and Aubert, which is directly responsive to this category. (Dkt. No. 121, Ex. C.)

### *Internal Documents Concerning the Preparation of Rules of Conduct for the Drivers and Millwrights in the Aftermath of the Accident*

Vezer acknowledges that Central Sun produced a copy of the "Rules of Conduct for Vezer Employees in Nicaragua," created a few days after the accident, which Vezer did not produce. (See Dkt. No. 120, Ex. G.) However, Vezer argues that plaintiffs have no evidence that any other similar documents exist.

### *Documents Concerning Employment Status of the Millwrights*

Vezer states that it has already produced documents establishing plaintiffs' employment status with Vezer. (Dkt. No. 121, Ex. D.)

### *Documents Concerning the Use of Drivers for Recreational Activities*

Vezer contends that it has already produced a copy of the contract between Central Sun and Aubert, (dkt. no. 121, ex. C), as well as a document regarding Central Sun light vehicle traffic procedures.

### *E-mails Between Vezer and Central Sun*

Vezer acknowledges that three e-mails between Central Sun and Vezer executives related to the accident had been produced by Central Sun and not by Vezer. (See Dkt. No. 120, Ex. C.) However, Vezer contends that this does not suggest that other such e-mails exist, especially given that most of the communications with Central Sun after the accident were allegedly not via e-mail and the fact that Central Sun has not produced any additional e-mails.

\\\\

\\\\

*Daily Logs, Sign-In Sheets, Minutes from Meetings*

Plaintiffs claim that Vezer failed to produce its daily logs listing assignments for the millwrights, daily sign-in sheets, and minutes from project status meetings at the mine. (See Dkt. No. 120, Exs. F, H, I, J and L.) Vezer argues that plaintiffs do not identify the relevance of such documents. Vezer also claims that none of the document requests call for the production of these documents, and that plaintiffs provide no evidence that Vezer possesses them.

DISCUSSION

It is apparent that plaintiffs' motion to compel is in fact a motion for sanctions. Although plaintiffs generally suggest that Vezer's objections to the document requests are improper, they do not address their argument to any particular request(s).[2] Additionally, Vezer specifically represented that it has not withheld documents on the basis of any objection or privilege. (Dkt. No. 120, Ex. A.) Vezer again clarified at the hearing that it has no further responsive documents. Any computers which may have contained additional ESI are apparently no longer in Vezer's possession.

Thus, the thrust of the motion is that Vezer should be sanctioned for its failure to preserve relevant documents and ESI. In particular, plaintiffs essentially seek a default sanction in requesting that the court rule that Vezer is liable for the injuries suffered by the plaintiffs. Alternatively, plaintiffs request that Vezer be precluded from contesting all or some of a number of issues relating to the parties' claims and defenses, for example, that Vezer assumed the duty to provide safe transportation for its employees, directed and controlled the drivers, was negligent in hiring, retaining, and training the drivers, etc. Finally, plaintiffs also request monetary

---

[2] Certainly, some of the requests appear to be vague and grossly overbroad. See e.g. Request Nos. 68 (Any and all DOCUMENTS RELATED TO any risk analysis performed RELATING TO the OROSI MINE); and 70 (Any and all DOCUMENTS RELATED TO security at the OROSI MINE). Objections may or may not have been warranted with respect to some of the requests. However, without any specific argument made as to any particular requests or categories of requests, the court declines to embark on its own analysis of each individual request.

sanctions.

As an initial matter, Vezer argues that plaintiffs' motion should be denied based on various procedural grounds. First, Vezer notes that the notice of motion failed to state that plaintiffs were seeking sanctions on the grounds of spoliation. While this is technically true, Vezer was on notice of the issues presented by this motion due to plaintiffs' filings related to their earlier motion to compel. (See Dkt. No. 110.) Additionally, Vezer has had an opportunity to respond to plaintiffs' arguments in its portion of the joint statement and at oral argument.

Second, Vezer contends that plaintiffs' motion should be denied as untimely, because plaintiffs waited approximately 11 months after Vezer's document production in October 2010 before filing the motion. However, the depositions of Zarif and Mr. Vezer, which confirmed that ESI was lost, only took place on September 22, 2011 and October 11, 2011 respectively. While the court recognizes that plaintiffs had some control over the scheduling of these depositions, the court cannot conclude on the present record that the motion is untimely. Vezer's argument that it is somehow prejudiced by any delay in filing the motion is also without merit. As will be discussed below, Vezer had an affirmative duty to preserve relevant documents and ESI, regardless of when the documents or ESI were formally requested in discovery or when a motion was filed.

Third, Vezer argues that plaintiffs' portion of the joint statement violates E.D. Cal. L.R. 251(c). The court agrees that plaintiffs failed to provide a statement of the nature of the action and its factual disputes insofar as they are pertinent to this discovery motion. Consequently, the court was forced to glean many of the necessary background facts from the operative complaint. Plaintiffs also failed to organize its portion of the joint statement by categories of documents or issues allowing both parties to set forth their arguments and authorities immediately following each category or issue. Instead, plaintiffs merely provided a string of examples of documents that have allegedly not been produced, in no discernable order. To be sure, E.D. Cal. L.R. 251(c) provides, in part, that: "When an objection is raised to a

number of items or a general protective order is sought that is related to a number of specific items, the arguments and briefing need not be repeated." However, this does not absolve a party from reasonably grouping or categorizing discovery requests at issue. Failure to do so results, as it did here, in merely combining a moving and opposing brief into a lengthy single document, thereby frustrating the purpose of the joint statement and resulting in significant waste of the court's time and resources. Nevertheless, in light of the imminent discovery cut-off date and to lend efficiency to these proceedings, the court will proceed to the merits of the motion.

District courts may impose sanctions as part of their "inherent powers that are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp., 982 F.2d 363, 368 (9th Cir. 1992). "The district courts' inherent power to sanction may be invoked in response to destruction of evidence. If a party breaches its duty to preserve evidence, the opposite party may move the court to sanction the party destroying evidence." In re Napster, Inc. Copyright Litigation, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006). "However, the determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis." Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003).

Thus, the court must first consider whether Vezer breached its duty to preserve documents or ESI in this matter. If so, the court must consider what sanctions, if any, are appropriate.

Breach of Duty to Preserve Documents and Evidence

"Identifying the boundaries of the duty to preserve involves two related inquiries: *when* does the duty to preserve attach, and *what* evidence must be preserved?" Zubulake, 220 F.R.D. at 216 (emphasis in original).

With respect to when the duty to preserve attaches, "[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should

know is relevant to the action." In re Napster, Inc. Copyright Litigation, 462 F. Supp. 2d at 1067. "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Zubulake, 220 F.R.D. at 216.

As to the scope of the duty to preserve, "anyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary. While a litigant is under no duty to keep or retain every document in its possession ... it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." Zubulake, 220 F.R.D. at 217 (internal citations omitted). That duty "extends to those employees likely to have relevant information - the 'key players' in the case." Id. at 218. "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." Id.; see also National Association of Radiation Survivors, 115 F.R.D. 543, 557-58 (N.D. Cal. 1987) ("The obligation to retain discoverable materials is an affirmative one; it requires that the agency or corporate officers having notice of discovery obligations communicate those obligations to employees in possession of discoverable materials.").

In this case, the duty to preserve evidence arose, at the latest, on or about September 1, 2009 when Vezer was served with the complaint in the instant action. (See Dkt. No. 1, at p. 2.) At oral argument, Vezer's counsel stated that he had discussed discovery and preservation obligations, including the types of documents that may be relevant to this litigation, with his client at the outset of the litigation. However, it seems clear that a proper litigation hold was not implemented. For example, Mr. Vezer testified that he no longer has electronic data, files, and e-mails related to the litigation, because his computers may have crashed, he may have upgraded his computers, or he may have passed off his computers to other employees who have

now left the company. (Dkt. No. 120, Ex. S, at 42:5-43:4.)  Although Mr. Zarif testified that the information on his computer was lost when it crashed after he left Vezer's employment, he also acknowledged that he never searched for documents related to the case while still employed by Vezer and that he did not back up any of his electronic information.  (Dkt. No. 120, Ex. X, at 90:10-93:5.)  Vezer apparently made no efforts to retrieve potentially relevant information from Mr. Zarif's computer before he left the company.  This is not insignificant, given that Mr. Zarif only left Vezer in April 2010, approximately 7 months *after* Vezer was served with process in this action.

Vezer, in turn, generally argues that it is a small company, that this is not a document intensive case, and that most of the communications related to this matter took place over the phone or in person.  It also questions the relevance of certain categories of documents plaintiffs are seeking.  However, this does not explain why minimal, if any, efforts were made to preserve relevant documents and ESI, including documents sent, received, or created by key players such as Mr. Vezer and Mr. Zarif.  Plaintiff has been able to point to at least a small number of relevant e-mails and documents that were not preserved, such as the post-accident e-mails between Vezer and Central Sun.  The fact that Zarif's computer crashed is also no excuse, given that Zarif admitted that he did not back up any of his ESI.  See Housing Rights Center v. Sterling, 2005 WL 3320739, at *3 (C.D. Cal. March 2, 2005) ("Defense counsel's apparent failure, in this electronic age, to verify with appropriate representatives of their client whether there was an e-mail backup system, cannot be countenanced.").

In sum, it appears that, despite its counsel's instructions, Vezer merely proceeded with business as usual, without making any special effort to retain ESI relevant to this litigation.  As such, Vezer has breached its duty to preserve discoverable information and the court may impose sanctions.

\\\\

\\\\

<u>Sanctions</u>

"A party's destruction of evidence need not be in 'bad faith' to warrant a court's imposition of sanctions. District courts may impose sanctions against a party that merely had notice that the destroyed evidence was potentially relevant to the litigation." <u>In re Napster, Inc. Copyright Litigation</u>, 462 F. Supp. 2d at 1066 (citing <u>Glover v. BIC Corp.</u>, 6 F.3d 1318, 1329 (9th Cir. 1993) and <u>Akiona v. United States</u>, 938 F.2d 158, 161 (9th Cir. 1991)). "However, a party's motive or degree of fault in destroying evidence is relevant to what sanction, if any, is imposed." <u>In re Napster, Inc. Copyright Litigation</u>, 462 F. Supp. 2d at 1066-67. "In determining the appropriate sanction, courts should seek to impose a sanction that accomplishes the following objectives: (1) penalize those whose conduct may be deemed to warrant such a sanction; (2) deter parties from engaging in the sanctioned conduct; (3) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (4) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." <u>Kopitar v. Nationwide Mut. Ins. Co.</u>, 266 F.R.D. 493, 500 (E.D. Cal. 2010); see also <u>Schmid v. Milwaukee Electric Tool Corp.</u>, 13 F.3d 76, 79 (3rd Cir. 1994) (courts should "select the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim").

As discussed above, plaintiffs have requested a default judgment, or in the alternative, an issue preclusion order, as well as monetary sanctions.

*Default Judgment/Issue Preclusion Order*

Dismissal or entry of default judgment are available sanctions when "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings...." <u>Leon v. IDX Syss. Corp.</u>, 464 F.3d 951, 958 (9th Cir. 2006). Before imposing such a "harsh sanction," however, the district court should consider the following factors: "(1) the public's interest in expeditious resolution of the litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring

disposition of cases on their merits; and (5) the availability of less drastic sanctions." Id.  The court need not specifically address all five factors, but it must find willfulness, fault, or bad faith, and it must consider less severe alternatives.  Id.

Here, the harsh sanction of a default judgment is not appropriate.  First, there is no indication that the information was destroyed in bad faith.  Vezer is undoubtably at fault for its failure to preserve ESI related to this litigation and has displayed a surprisingly cavalier attitude with respect to its discovery obligations.  But, Vezer's conduct essentially amounts to gross negligence, and there is no evidence that it deliberately destroyed documents or ESI.  Furthermore, Vezer's behavior "does not constitute a pattern of deliberately deceptive litigation practices that are likely to continue as the action proceeds, thereby preventing the resolution of this action."  In re Napster, Inc. Copyright Litigation, 462 F. Supp. 2d at 1077.

Second, there are several indicators that the resulting prejudice to plaintiffs is not severe.  A party suffers prejudice if the opposing party's actions impair that party's ability to go to trial or threaten to interfere with the rightful decision of the case.  See Kopitar, 266 F.R.D. at 499.  In this case, there is evidence that the number of e-mails lost is low.  Both Mr. Vezer and Zarif testified that the communications between them regarding the accident were not over e-mail, but instead over the phone or in person. Although plaintiffs discovered three e-mails between Vezer and Central Sun regarding the accident that were not produced by Vezer, Central Sun has not produced any additional e-mails, suggesting that it is unlikely that further e-mails between Vezer and Central Sun on that subject exist.  Furthermore, while it seems clear that other documents were likely lost (e.g. sign-in sheets, daily logs, and minutes from mine project status meetings), it is unclear how these documents are crucial to plaintiffs' case.  For example, plaintiffs fail to provide a satisfactory explanation of how e-mails between Vezer and Central Sun concerning early negotiations of the mine contract, predating the plaintiffs' arrival in Nicaragua, are relevant.  Presumably, the legal relationships created by the final operative mine contract and/or transportation contract are what is at issue in this dispute, regardless of whatever

arrangements may have been contemplated in earlier negotiations.[3]

Of course, it is not possible to determine the exact number of relevant documents that may have been lost. Certainly, "[t]he spoliation of evidence germane to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." Zubulake, 220 F.R.D. at 216; see also National Association of Radiation Survivors, 115 F.R.D. at 557 (holding that where "the relevance and resulting prejudice from destruction of documents cannot be clearly ascertained because the documents no longer exist...the culpable party can hardly assert any presumption of irrelevance as to the destroyed documents"). However, a presumption of prejudice here is inappropriate because there is no evidence that Vezer's actions amounted to more than gross negligence. See In re Napster, Inc. Copyright Litigation, 462 F. Supp. 2d at 1076.

Fundamentally, plaintiffs need to discover the relationship between the driver and Vezer, whether the driver was acting under Vezer's direction and control, and perhaps more generally, what duty Vezer had with respect to transportation for the plaintiffs. Certain contracts bearing on these issues have already been produced. Moreover, testimony from Central Sun representatives, Aubert representatives, the drivers, and the plaintiffs themselves would shed light on the matter. Thus, even assuming the loss of some relevant e-mails, the court cannot confidently conclude that plaintiffs are truly impaired in their ability to go to trial or secure a rightful decision.

For these same reasons, the court finds that an issue preclusion order is unwarranted. Many of the issues plaintiffs seek to have established in their favor are virtually

---

[3] Vezer also argues that, in any event, plaintiffs' broad-sweeping document requests cannot reasonably be read to have requested documents such as sign-in sheets, daily logs, meeting minutes, etc. While the court generally agrees with that statement, the obligation to preserve potentially relevant documents is of course independent of any document request. The court cannot determine on the incomplete record before it whether documents such as the sign-in sheets, daily logs, and meeting minutes were or were not sufficiently relevant to the litigation to trigger Vezer's obligation to preserve them. The court merely notes that the loss of these documents does not appear to result in significant prejudice to plaintiffs.

dispositive of large aspects of the case, e.g. that Vezer assumed the duty to provide safe transportation for its employees, directed and controlled the drivers, was negligent in hiring, retaining, and training the drivers, etc.  Given the lack of deliberate, bad faith conduct by Vezer and demonstrable prejudice to plaintiffs, the court declines to impose such harsh sanctions.

*Monetary Sanctions*

The court finds, however, that monetary sanctions are appropriate.  "Monetary sanctions may be imposed where one party has wrongfully destroyed evidence."  In re Napster, Inc. Copyright Litigation, 462 F. Supp. 2d at 1078; see also Kopitar, 266 F.R.D. at 501 ("Courts...have held that a party failing to preserve relevant evidence is subject to monetary sanctions even if the motion for terminating sanctions is denied.").  Here, for the reasons discussed above, it is clear that Vezer breached its obligation to preserve documents and ESI relevant to this litigation.  The court has reviewed the Affidavit of Robert R. Luke and accompanying documentation in support of plaintiffs' request for fees and expenses related to their motion, as well as Vezer's opposition to plaintiffs' request. (Dkt. Nos. 132, 133.)  Plaintiffs seek a total of $10,705.11, including $6,800 in attorneys' fees and $3,905.11 in expenses. (Dkt. No. 132-1, at 3.)

With respect to attorneys' fees, the court finds Mr. Luke's billing rate of $500 per hour to be excessive.  Plaintiffs provide no evidence of any special expertise or experience to justify such a high rate.  Therefore, Mr. Luke's hourly rate will be reduced to $300 per hour.  The court further finds that the quality of the briefing submitted does not support the claimed *28 hours* of work on plaintiffs' motion. (Dkt. No. 132-1, at 2.)  Mr. Coveny's 20 hours of "legal research and writing" will be reduced to 8 hours at a rate of $200 per hour.  Mr. Luke's 5 hours of "review and revisions of materials" will be reduced to 2 hours at a rate of $300 per hour.  Furthermore, the court will not award fees for hours billed by plaintiffs' paralegal, Leslie Fink, to "implement revisions."  That work appears to be administrative in nature as opposed to billable

\\\\

paralegal work. Accordingly, plaintiffs will be awarded fees in the amount of $2,200.[4]

Plaintiffs' requested expenses are also grossly excessive and without adequate documentary support.[5] First, plaintiffs provide no explanation as to why the appearance of two attorneys at a hearing on a discovery motion was necessary. As such, the court will not award any travel expenses related to Mr. Luke's associate, Mr. Coveny. Second, as Vezer points out, for Mr. Luke's airfare between Houston and Sacramento to cost $1,187.90, Mr. Luke must have traveled first class or booked travel at the last minute. Regardless of the reason, the court finds the amount unreasonable and will instead award plaintiffs $600 for Mr. Luke's airfare. Third, an approximately one-hour hearing does not justify two nights in a hotel. Plaintiffs state that "[t]o avoid catching a red eye flight a two night hotel stay to attend the hearing was needed." (Dkt. No. 132-1, at 3.) Vezer should not be required to subsidize plaintiffs' counsel's travel preferences. Thus, the court will only award the cost of one night's lodging for Mr. Luke. Finally, the court will not award any expenses related to meals. Presumably, counsel needed to eat whether in Sacramento or Houston. In light of the above, the court awards plaintiffs expenses in the amount of $992.73 related to Mr. Luke's travel: $600 for airfare, $310.73 for one night's lodging, and $82.00 for parking and cabs.

In sum, plaintiffs will be awarded monetary sanctions in the total amount of $3,192.73. Vezer's request for monetary sanctions will be denied.

\\\\

\\\\

\\\\

---

[4] ($200 x 8 hrs) + ($300 x 2 hrs) = $2,200.

[5] Plaintiffs request expenses as follows: round trip airfare for Mr. Luke ($1,187.90); two-night hotel stay for Mr. Luke ($621.46); parking and cabs for Mr. Luke ($82.00); airfare for Mr. Coveny ($1,337.90); two-night hotel stay for Mr. Coveny ($374.24); parking and cabs for Mr. Coveny ($44.00); and meals for Mr. Luke and Mr. Coveny ($257.61). Plaintiffs do not attach receipts or invoices for any of these expenses.

CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

1. Plaintiffs' motion to compel and/or for sanctions (dkt. no. 114) is granted in part and denied in part.

2. Plaintiffs are awarded monetary sanctions in the total amount of $ 3,192.73. Vezer shall pay these sanctions within 28 days of the date of this order.

3. Vezer's request for monetary sanctions is denied.

Dated: November 29, 2011

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

CKD/5
Perez.2850.mtc.wpd