UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN PEREZ, MICHAEL MOORE, and BRIGETTE MOORE | No. 2:09-cv-02850-MCE-KJM |
| Plaintiffs, | |
| vs. | |
| VEZER INDUSTRIAL PROFESSIONALS, INS., a California Corporation and DOES 1-50 inclusive, | ORDER |
| Defendants. | |
| _____/ | |
| VEZER INDUSTRIAL PROFESSIONALS, INC., | |
| Third-Party Plaintiffs, | |
| vs. | |
| PINPOINT HOLDINGS, INC., a corporation; B2 GOLD, a Canadian corporation | |
| Third-Party Defendants. | |
| _____/ | |

///

///

1

Through the present lawsuit, Plaintiffs Ruben Perez and Michael Moore (hereinafter "Plaintiffs" unless otherwise specified[1]) seek damages for personal injuries they sustained in a motor vehicle accident that occurred while they were working at a Nicaragua mining site whose construction was being managed by Defendant Vezer Industrial Professionals, Inc. ("Vezer"). The Court's jurisdiction in this matter is premised on diversity of citizenship under 28 U.S.C. § 1332(a).

Following the commencement of Plaintiffs' action against Vezer, Vezer in turn filed a third-party action which sought, <u>inter alia</u>, express and equitable indemnity against PinPoint Holdings, Inc. ("PinPoint"), the employment agency under whose auspices Plaintiffs were hired. PinPoint now seeks summary judgment, or alternatively summary adjudication of issues, on grounds that Vezer's indemnity claims are barred. For the reasons set forth below, PinPoint's motion will be denied in its entirety.[2]

**BACKGROUND**

In September of 2008, Plaintiffs, who are both millwrights for heavy equipment, were contacted by PinPoint about doing work for Vezer at a remote mining site in the mountains near La Libertad, Nicaragua.

---

[1] The third named Plaintiff, Brigette Moore, asserts a loss of consortium claim based on Michael Moore's injuries.

[2] Because oral argument was not determined to be of material assistance, the Court ordered this matter submitted on the briefing. E.D. Local Rule 230(g).

2

Vezer had been hired by the mine's owner, Third-Party Defendant Central Sun Mining ("Central Sun"), to install new equipment. PinPoint describes itself as a staffing and payroll service company that assists customers by supplying skilled labor personnel for projects, and by handling the payroll for such personnel. PinPoint concedes that in this capacity it engaged and employed Plaintiffs to provide services to Vezer at the Nicaraguan mining site. It is also undisputed that PinPoint agreed to and did secure Worker's Compensation insurance coverage for both Plaintiffs at the time they were hired.

On October 5, 2008, while in Nicaragua, Plaintiffs were involved in an automobile accident shortly after midnight. Both suffered physical injuries and, on July 27, 2009, sued Vezer in state court for its alleged negligence in providing unsafe transportation. The state court action was subsequently removed to this court on diversity grounds. Then, on February 5, 2010, Vezer filed a Third Party Complaint against PinPoint and others, as later amended on June 11, 2010. Vezer's claim against PinPoint is predicated on a March 12, 2008 Purchase Order for Labor and Services between Vezer and Pinpoint pursuant to which Plaintiffs were hired. Vezer claims the provisions of that Purchase Order entitle it to express indemnity. The indemnification clause contained in the Purchase Order provides as follows:

///
///
///
///

      11.  <u>Indemnification.</u> To the fullest extent permitted by law, [PinPoint] shall indemnify and hold harmless [Vezer] and its agents and employees from and against claims, damages, losses and expenses, including, but not limited to, attorneys' fees arising out of or resulting from performance of the Work, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of property including the loss of use resulting therefrom, but only to the extent caused in whole or in part by the acts or omissions of [PinPoint], [PinPoint's] subcontractors, anyone directly or indirectly employed by them, or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss, or expense is attributable in whole or in part to any act, omission, or negligence of a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party, person, or entity described herein with respect to indemnity."

Purchase Order, ¶ 11, attached as Ex. A to the Declaration Of Mark Hall filed in Support of PinPoint's Motion.

    Pursuant to the Purchase Order, "[t]he term 'Work' means all goods, items, materials, equipment, labor and/or other services that are the subject of this purchase order." <u>Id.</u> at ¶ 1.

    PinPoint's Motion now before the Court is premised on the fact that the Purchase Order was signed only by Mark Hall of PinPoint and, accordingly, is not enforceable absent execution by both parties. Because PinPoint thereby claims the indemnity provision to be inapplicable, it argues that Vezer's third-party claim based on the indemnification clause fails. In the absence of an enforceable indemnity provision, PinPoint goes on to argue that PinPoint is insulated from Vezer's claim because of the exclusivity rule applicable to worker's compensation.

///
///

4

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. at 325.

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying . . . the part of each claim or defense . . . on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Twp. of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp., 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

1    If the moving party meets its initial responsibility, the
2 burden then shifts to the opposing party to establish that a
3 genuine issue as to any material fact actually does exist.
4 <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,
5 585-87 (1986); <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S.
6 253, 288-89 (1968).
7    In attempting to establish the existence of this factual
8 dispute, the opposing party must tender evidence of specific
9 facts in the form of affidavits, and/or admissible discovery
10 material, in support of its contention that the dispute exists.
11 Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that
12 the fact in contention is material, i.e., a fact that might
13 affect the outcome of the suit under the governing law, and that
14 the dispute is genuine, i.e., the evidence is such that a
15 reasonable jury could return a verdict for the nonmoving party.
16 <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 251-52
17 (1986); <u>Owens v. Local No. 169, Assoc. of W. Pulp and Paper
18 Workers</u>, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way,
19 "before the evidence is left to the jury, there is a preliminary
20 question for the judge, not whether there is literally no
21 evidence, but whether there is any upon which a jury could
22 properly proceed to find a verdict for the party producing it,
23 upon whom the onus of proof is imposed."  <u>Anderson</u>, 477 U.S. at
24 251 (quoting <u>Improvement Co. v. Munson</u>, 81 U.S. 442, 448 (1871)).
25 As the Supreme Court explained, "[w]hen the moving party has
26 carried its burden under Rule 56(c), its opponent must do more
27 than simply show that there is some metaphysical doubt as to the
28 material facts . . . .

6

Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

It is well established that lawsuits by an employee against his or her employer for injuries during the course and scope of employment are subject to the exclusive remedy of the worker's compensation system and the benefits attendant thereto. California Labor Code Section 3600(a)(3) states unequivocally that worker's compensation liability shall exist against an employer for any injury sustained by his or her employees that arose in the course and scope of employment. Section 3602 goes on to prescribe that when applicable, worker's compensation is "the sole and exclusive remedy of the employee against the employer..." Cal. Lab. Code § 3602(a).

///
///

7

An employee accordingly may not pursue a separate civil action for damages against the employer if worker's compensation applies. See, e.g., <u>Privette v. Superior Court</u>, 5 Cal. 4th 689, 698 (1993). The limitation on employer liability encompassed by worker's compensation also precludes a party other than the employee from obtaining indemnity from the employer for an employee's injuries sustained in the course and scope of employment. <u>Id.</u>, Cal. Lab. Code § 3864. Consequently, if one assumes that PinPoint was Plaintiffs' employer and that the injuries sustained by Plaintiffs in the October 5, 2008 motor vehicle accident occurred during the course and scope of their employment, then worker's compensation would appear to preclude both any action by Plaintiffs against PinPoint (no such direct claims have been made, however, with Plaintiffs having sued only Vezer). In addition, the same principles of worker's compensation as stated above would also bar Vezer's claim for indemnity under the above scenario unless some exception to the exclusivity rule applies.

California Labor Code Section 3864 does, however, provide a limited exception to the general rule of worker's compensation exclusivity. Specifically, Section 3864 allows an entity sued by an employee (like Vezer) to seek indemnity against the employee's employer (here, PinPoint) if an indemnity obligation is set forth in a written agreement executed prior to the injury. Here, as delineated above, just such an indemnity agreement was contained within the operative Purchase Order between Vezer and PinPoint. Vezer, in attempting to bring itself within the scope of Section 3864's exemption, has the burden of establishing its application.

See <u>Behrens v. Fayette Mfg Co.</u>, 4 Cal. App. 4th 1567, 1574 (1992) ("[party] seeking to be excluded from the general sweep of the exclusive remedy of workers' compensation, must establish that the exception applies.").

    Here, as indicated above, Vezer points to the specific terms of an indemnity provision under the terms of which PinPoint agreed to indemnify and hold Vezer harmless from liability arising from injury sustained by individuals is placed (like Plaintiffs) during the course and scope of their employment. PinPoint nonetheless asks the Court to ignore that provision because the Purchase Order was not physically signed by a representative of Vezer, even though it was undisputedly executed by PinPoint as the proposed indemnitor. PinPoint argues that absent both parties' signatures, the indemnity agreement is ineffective. It cites several cases to support that proposition, and consequently argues that any attempt by Vezer to bring itself within the exception represented by Section 3864 must fail. <u>See</u>, <u>e.g.</u>, <u>Hansen Mech. Inc. v. Superior Court</u>, 40 Cal. App. 4th 722, 731 (1995); <u>Nielsen Constr. Co. v. Int'l Iron Products,</u> 18 Cal. App. 4th 863, 869 (1993). Other California appellate cases, however, have come to the opposite conclusion. In <u>City of Oakland v. Delcon Assoc.</u>, 168 Cal. App. 3d 1126 (1985), for example, the court determined that "[t]he Labor Code's requirement that an indemnity agreement be in writing and executed prior to the injury means executed by the party sought to be bound – the employer." Id. at 1130. This of course means that having been executed by PinPoint, the indemnity provision ought to be enforceable.

9

1  Significantly, while the Ninth Circuit was presented with this
2  issue in Blake v. Excel Environmental, 104 F.3d 1158 (1996), it
3  did not address the foregoing split of authority, finding only
4  that because the indemnitor (here PinPoint) had not signed, the
5  indemnity provision was not enforceable. Id. at 1162 ("Because
6  the purchase order was never signed by Excel, Section 3864
7  renders the indemnification clause ineffective").

8  　　　Given what unquestionably represents, at the very least, a
9  split of opinion in California law, this Court cannot find as a
10 matter of law that the indemnification clause in inoperable, as
11 it would have to do to grant summary adjudication on that issue
12 in favor of PinPoint.  Under the particular facts of this case,
13 that conclusion is further underscored by the fact that it was
14 Vezer who prepared the Purchase Order and submitted it to
15 PinPoint for signature.  PinPoint not only signed the agreement,
16 it also accepted compensation pursuant to its terms.  To now
17 repudiate the agreement under those circumstances is, at best,
18 disengenuous.

19 　　　Having determined that PinPoint cannot rely as a matter of
20 law on the invalidity of the Purchase Order's indemnification
21 clause, PinPoint's only remaining argument becomes whether or not
22 the accident in question occurred outside the scope of
23 Plaintiff's employment so escape the provisions of the indemnity
24 agreement in any event.  The operative Purchase Order, as
25 indicated above, refers to claims and damages arising from the
26 performance of the "work," with work, in turn, defined as the
27 services that are the subject of the Purchase Order.
28 ///

If PinPoint can establish as a matter of law that the October 5, 2008 accident unequivocally occurred outside the scope of Plaintiffs' employment, then it still could potentially obviate the possibility of any indemnity being owed under the agreement.

As delineated in great detail in this Court's concurrent rulings on Vezer's Motions for Summary Judgment, as well as a corresponding motion filed by Plaintiffs (ECF Nos. 150, 154 and 165), any determination as to whether the accident arose within the course and scope of Plaintiffs' employment necessarily requires the resolution of numerous disputed issues of fact that are not amenable to disposition on summary judgment.[3] PinPoint's additional argument that Plaintiff Moore should be estopped because he received worker's compensation benefits also fails for the reasons discussed in the Court's corresponding Memorandum and Order adjudicating the other three summary judgment motions.  That reasoning is also adopted for purposes of this Order and need not be repeated here.

Finally, while PinPoint appears to argue by way of a lengthy footnote that indemnity may also be unavailable because it had nothing to do with any alleged negligence that contributed to the cause of the accident (PinPoint alleges it had no role in the operation of the mine or in the oversight, direction and control of Plaintiffs while working there), that argument amounts to no more than an unsupported allegation, with no supporting reference whatsoever in Pinpoint's Statement of Undisputed Facts.

---

[3] The Court's reasoning in rejecting that argument in its decision on those three motions in incorporated herein by reference and consequently need not be reiterated in its entirety in the present Memorandum and Order.

11

Moreover, despite that foundational deficit, whether PinPoint had any responsibility in its selection and recruitment of employees, and whether any deficit in that regard may have figured in the cause of the subject accident, would appear to entail the weighing of factual matters also not amenable to decision as a matter of law on summary judgment.

## CONCLUSION

For all the foregoing reasons, PinPoint's Motion for Summary Judgment, or Alternatively for Partial Summary Judgment (ECF No. 141) is DENIED in its entirety.[4]

IT IS SO ORDERED.

Dated: September 24, 2012

MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[4] The Court notes that PinPoint has filed certain evidentiary objections to the Declaration of Frank Vezer filed in opposition to Pinpoint's motion. Those objections are overruled.

12