UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RUBEN PEREZ, MICHAEL MOORE, and BRIGETTE MOORE,

No. 2:09-cv-02850-MCE-KJM

    Plaintiffs,

    vs.

**MEMORANDUM AND ORDER**

VEZER INDUSTRIAL PROFESSIONALS, INS., a California Corporation and DOES 1-50 inclusive,

    Defendants.
_____/

VEZER INDUSTRIAL PROFESSIONALS, INC.,

    Third-Party Plaintiffs,

    vs.

PINPOINT HOLDINGS, INC., a corporation; B2 GOLD, a Canadian corporation

    Third-Party Defendants.
_____/

///

///

1

1    Through the present lawsuit, Plaintiffs Ruben Perez and

2  Michael Moore (hereinafter "Plaintiffs" unless otherwise

3  specified)[1] seek damages for personal injuries they sustained in

4  a motor vehicle accident that occurred while they were working

5  at a Nicaragua mining site whose construction was being managed

6  by Defendant Vezer Industrial Professionals, Inc. ("Vezer").  The

7  Court's jurisdiction in this matter is premised on diversity of

8  citizenship under 28 U.S.C. § 1332(a).

9    Plaintiffs claim Vezer's alleged negligence contributed to

10 the cause of the subject accident  Now before the Court are three

11 different motions for summary judgment.  Vezer has separately

12 moved for summary judgment as to the claims being asserted by

13 Moore and by Perez.  Alternatively, Vezer seeks summary

14 adjudication both as to the individual claims being pursued by

15 both Plaintiffs, as well as to Plaintiffs' employment status with

16 Vezer and whether the accident occurred while Plaintiffs were in

17 the course and scope of that employment.  Plaintiffs, for their

18 part, also seek summary judgment as to the case as a whole.  They

19 go on to request summary adjudication as to employment status of

20 J.J. Ocon, the individual who operated the vehicle at the time of

21 the subject accident.  Plaintiffs further ask the Court to

22 determine as a matter of law that Ocon was in the course and

23 scope his alleged employment with Vezer when the incident took

24 place and Vezer accordingly had a duty to prevent  foreseeable

25 injures to Plaintiffs.  For the reasons set forth below, summary

26 judgment will be denied.

27

28    [1] The third named Plaintiff, Brigette Moore, asserts a loss
of consortium claim based on Michael Moore's injuries.

The parties' alternative requests for summary adjudication, however, will be granted in part and denied in part as set forth below.[2]

## BACKGROUND

In September of 2008, Plaintiffs, who are both millwrights for heavy equipment, were contacted by Third Party Defendant Pinpoint Holdings, Inc. ("Pinpoint"), an employment agency, about doing work for Vezer at a remote mining site in the mountains near La Libertad, Nicaragua. Vezer had been hired by the mine's owner, Cross Defendant Central Sun Mining ("Central Sun") to install new equipment. According to Plaintiffs, Vezer agreed to provide lodging, food and transportation, as well as a monthly wage and travel allowance, in return for Plaintiff's specialized labor in installing the equipment.

On the evening of October 4, 2008, after the mine cafeteria apparently ran out of food, Plaintiffs claim they were instructed by Vezer personnel to go into a nearby town for dinner. Central Sun had contracted with a local company, Aubert Transportation, to provide all transportation services needed by the mine workers. One of those drivers retained by Aubert for that purpose proceeded to take Moore and Perez into the nearby town of San Pedro for dinner.

///

---

[2] Because oral argument was not determined to be of material assistance, the Court ordered this matter submitted on the briefing. E.D. Local Rule 230(g).

What occurred after dinner remains in significant dispute. J.J. Ocon testified that he received a call between 9:00 p.m. and 10:00 p.m. asking that he pick Plaintiffs up in San Pedro (Ocon had not initially driven Plaintiffs to San Pedro).  According to Plaintiffs, Ocon was driving them back to the mine from dinner when the pickup he was operating swerved off the steep roadway. Perez testified there was a total of only four people in the vehicle at the time.  Perez Dep., 5:7-15.  Both Plaintiffs sustained serious injuries as a result of the incident, which occurred between midnight and 1:00 a.m., and there is some indication that one or both may have suffered certain memory lapses as a result thereof.  See, e.g., Plaintiff Moore's Response to Vezer's Statement of Undisputed Material Facts, No. 7, which indicates that Moore "suffered a devastating injury and has no recollection of the accident.")

Other witnesses offer a starkly different version of what happened.  Ocon, for his part, claims Plaintiff Perez demanded that he transport as many as twelve other people, over Ocon's objection, first to a gas station to purchase liquor and food, and then to a discotheque in another town, Juigalpa.  See Vezer's Statement of Additional Material Facts in Opposition to Plaintiff's Motion, Nos. 12, 15.  Ocon goes on to claim that Vezer instructed him to turn in the direction opposite from the mine before stopping at the gas station, with the accident itself occurring later on a roadway heading away from the mine.  Id. at 14.

///

///

4

Ocon further testified that although he wanted to return to the mine (a 10:00 p.m. curfew was in place) rather than go to a disco in Juigalpa, Perez threatened to have him fired if he failed to follow Perez's demands. Id. at 5, 7, 15. The accident undisputedly occurred well after the applicable mine curfew.[3]

Other witnesses, which included certain of the additional passengers riding in the back of the pickup, also confirmed that the truck operated by Ocon was en route to Juigalpa, and not back to the mine, when the subject incident occurred. Those witnesses further corroborated Ocon's testimony that there were as many as fifteen people riding on the truck at the time of the accident. See, e.g., Plaintiffs' Response to Vezer's Statement of Undisputed Material Facts, No. 29 and evidence cited therein.

The cause of the accident is also in dispute. Ocon claims that two tires blew just beforehand, apparently because the vehicle was overloaded. According to Ocon, he received a citation for the excessive weight associated with that overloading, but not for speeding or for intoxication, despite other evidence cited to suggest that Ocon was also speeding and/or under the influence of alcohol when the incident occurred.` See Vezer's Statement of Additional Material Facts in Opposition to Plaintiffs' Motion, No. 11.

///

///

---

[3] While Plaintiffs testified they believed the curfew was at 11:00 p.m. rather than 10:00 p.m. (See Moore Dep., 85:15-86:8; Perez Dep., 145:3-7) under either scenario the curfew had long since passed at the time of the accident, which occurred well after midnight.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56©; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex Corp. v. Catrett, 477 U.S. at 325.

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense.  See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying . . . the part of each claim or defense . . . on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Twp. of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a), 56©; Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp., 477 U.S. at 323 (quoting Fed. R. Civ. P. 56©).

6

1       If the moving party meets its initial responsibility, the

2 burden then shifts to the opposing party to establish that a

3 genuine issue as to any material fact actually does exist.

4 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

5 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

6 253, 288-89 (1968).

7       In attempting to establish the existence of this factual

8 dispute, the opposing party must tender evidence of specific

9 facts in the form of affidavits, and/or admissible discovery

10 material, in support of its contention that the dispute exists.

11 Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that

12 the fact in contention is material, i.e., a fact that might

13 affect the outcome of the suit under the governing law, and that

14 the dispute is genuine, i.e., the evidence is such that a

15 reasonable jury could return a verdict for the nonmoving party.

16 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52

17 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper

18 Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way,

19 "before the evidence is left to the jury, there is a preliminary

20 question for the judge, not whether there is literally no

21 evidence, but whether there is any upon which a jury could

22 properly proceed to find a verdict for the party producing it,

23 upon whom the onus of proof is imposed."  Anderson, 477 U.S. at

24 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)).

25 As the Supreme Court explained, "[w]hen the moving party has

26 carried its burden under Rule 56©, its opponent must do more than

27 simply show that there is some metaphysical doubt as to the

28 material facts . . . .

Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. <u>Anderson</u>, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

**A.  Special Employment Issues**

In analyzing the motions presently before it, the Court will initially consider the employment status of both Plaintiffs and J.J. Ocon vis-a-vis Vezer, since that status significantly impacts the viability of both parties' requests for summary judgment, or, alternatively, for summary adjudication.  If Plaintiffs were special employees of Vezer, as Vezer claims, the workers' compensation bar may preclude their claims altogether if the accident at issue occurred during the course and scope of their special employment.

///

///

1   Additionally, if Ocon qualifies as a special employee of Vezer
2   under the circumstances of this matter, that factor could bear
3   significantly on Vezer's responsibility for Ocon's alleged
4   negligence.

5        It appears undisputed that technically Plaintiffs were hired
6   through the auspices of a labor broker, Pinpoint Holding, and
7   that Pinpoint arranged to secure workers' compensation insurance
8   inuring to Plaintiffs through its affiliate, Tech Trades.
9   Additionally, it is equally undisputed that J.J. Ocon was hired
10  by Aubert Transportation to perform the chauffering services he
11  was engaged in at the time of the accident.  The real issue here
12  is whether Plaintiffs and Ocon must also be deemed special
13  employees of Vezer.

14       Under California substantive law, which the Court must apply
15  in a diversity action like this one, a special employment status
16  "arises when an employer lends an employee to another employer
17  and relinquishes to the borrowing employer all right of control
18  over the employees' activities.  The borrowed employee is held to
19  have two employers – his original or 'general' employer and a
20  second, the 'special' employer." Wedeck v. Unocal Corp.,
21  59 Cal. App. 4th 848, 856-57 (1997) (internal citations omitted).

22       The question of whether a special employment exists is
23  generally a question of fact reserved for the jury.  Kowalski v.
24  Shell Oil Co., 23 Cal.3d 168, 175 (1979).  "However, if neither
25  the evidence nor inferences are in conflict, then the question of
26  whether an employment relationship exists becomes a question of
27  law which may be resolved on summary judgment." Riley v.
28  Southwest Marine, Inc., 203 Cal. App. 3d 1242, 1248 (1988).

1    As the Wedeck court noted, factors to be considered in
2 determining whether a special employment relationship exists
3 include "(1) whether the borrowing employer's control over the
4 employee and the work he is performing extends beyond mere
5 suggestion of details or cooperation; 2) whether the employee is
6 performing the special employer's work; (3) whether there was an
7 agreement, understanding or meeting of the minds between the
8 original and special employer; (4) whether the employee
9 acquiesced in the new work situation; (5) whether the original
10 employer terminated his relationship with the employee;
11 (6) whether the new special employer furnished the tools and
12 place for performance; (7) whether the new employment was over a
13 considerable length of time; (9) whether the borrowing employer
14 had the right to fire the employee; and (9) whether the borrowing
15 employer had the obligation to pay the employee." Wedeck,
16 59 Cal. App. 4th at 857, citing Riley v. Southwest Marine, Inc.,
17 203 Cal. App. 3d 1242, 1250 (1988). Wedeck went on, however, to
18 emphasize that the key factor in making a special employment
19 assessment rests with the level of control exerted by the
20 purported special employer over the employee:

21       "Of these considerations, the primary one in
         determining whether a special employment relationship
22       exists is whether the special employer has the right to
         control the direct the activities of the alleged
23       employee or the manner in which the work is performed,
         whether exercised or not..."
24

25 Wedeck, 59 Cal. App. 4th at 857, citing Kowalski, 23 Cal. 3d at
26 175; and Riley, 203 Cal. App. at 1250 (internal citations
27 omitted).
28 ///

10

1      It must nonetheless be noted that control need not be
2  exclusively vested in one employer in order for a special
3  employment relationship to exist.  As noted by <u>McFarland v.</u>
4  <u>Voorheis-Tindle Co.</u>, 52 Cal. 2d 698 (1959), "a general and
5  special employment is present if there exists in each some power,
6  not necessarily complete, of direction and control."  <u>Id.</u> at 704.
7      Applying these precepts first to J.J. Ocon and whether he
8  must be considered a special employer of Vezer as a matter of
9  law, Ocon drove vehicles supplied by Aubert Transportation, his
10 general employer, and not by Vezer.  Moreover, according to Ocon,
11 he reported to a Aubert supervisor, Jonathan Martinez, on a daily
12 basis even though he also apparently followed instructions
13 provided by Vezer with respect to his chauffering duties.  <u>See</u>
14 Defendant Vezer's Statement of Additional Material Facts in
15 Opposition to Plaintiffs' Motion, No. 2.  Ocon also testified
16 that Martinez instructed him on what rules to follow while
17 driving for mine employees.  <u>Id.</u> at No. 3.  Also bearing on the
18 special employment assessment is the fact that as a driver, Ocon
19 was not engaged in the general work of the mine and had worked as
20 a driver only a few months.  Finally, there is no evidence that
21 Vezer could fire Ocon from his position with Aubert
22 Transportation, and it was Aubert that in fact fired Ocon after
23 the subject accident.  <u>Id.</u> at No. 17.  All these factors, and the
24 conflicting inferences they entail, militate against finding a
25 special employment relationship between Vezer and Ocon.
26 Accordingly summary adjudication as to Ocon's employment status
27 in that regard is not indicated.
28 ///

1    The special employment status of both Plaintiffs, however,
2  presents a clearer picture.  Aside from performing certain
3  administrative duties, providing worker's compensation coverage,
4  and issuing paychecks, Pinpoint exercised virtually no control
5  over the conditions of Plaintiffs' employment.  Plaintiffs were
6  required to live at the mine site as a condition of their
7  employment and received lodging, food and transportation from
8  Vezer in addition to their monthly wage.  Plaintiffs dealt
9  exclusively with Vezer management at the mine, received their
10 orientation from Vezer supervisors, and obtained their job
11 assignments each morning from Vezer staff.  The equipment
12 Plaintiffs used appears to have been furnished from Vezer, and
13 both Plaintiffs believed that Vezer had the right to fire them.
14 Both Plaintiffs understood Vezer to be their employer.  See
15 Vezer's Undisputed Facts in Support of Motion as to Ruben Perez,
16 Nos. 2-3, 7-21; Vezer's Undisputed Facts in Support of Motion as
17 to Michael Moore, 3-4, 11-26.  Moore testified that he did not
18 even recall a labor broker being involved when he obtained his
19 job with Vezer.  Id. at 9.  After sending in his resume, it was a
20 representative of Vezer, and not Pinpoint, that contacted Moore.
21 Id. at 6.  Perez similarly understood that he was being hired by
22 Vezer.  Vezer's Undisputed Facts as to Perez, No. 8.

23    On the basis of the overwhelming evidence pointing towards
24 Vezer as a special employer for both Plaintiffs, the Court finds
25 that Vezer is entitled to summary adjudication as to that status.
26 ///
27 ///
28 ///

12

1          **B.   Negligence-Based Claims**

2

3          Having found that Plaintiffs were special employees of

4     Vezer's, but that no such determination as a matter of law can be

5     made with respect to Ocon, we now turn to the remaining issues

6     raised by the parties' motions.   Plaintiffs ask the Court to find

7     as a matter of law that Vezer had a duty to provide safe

8     transportation for Plaintiffs, that they breached that duty, and

9     that the breach resulted in a foreseeable injury to Plaintiffs.

10    Vezer, on the other hand, takes the countervailing position that

11    Plaintiffs' negligent-based causes of action (for negligence, for

12    negligent hiring, retention, training and supervision, and for

13    negligent retention) fail because the subject accident did not

14    occur during the course and scope of Plaintiffs' employment, and

15    therefore Vezer owed no duty sounding in negligence.

16    Alternatively, as discussed separately below, Vezer claims that

17    if Plaintiffs' injuries did occur within the course and scope of

18    any employment with Vezer, they would be barred by the exclusive

19    remedy provisions attendant to worker's compensation.   All of

20    these determinations require factual findings in the face of

21    conflicting evidence.   Plaintiffs' deposition testimony indicates

22    they were on their way back to the mine at the time of the

23    accident, yet testimony from Ocon and other passengers indicates

24    this was not the case.

25    ///

26    ///

27    ///

28    ///

1  To the extent that the trip to Juigalpa was unauthorized (an

2  inference gleaned both from Ocon's testimony that he objected to

3  making the drive, and also objected to the excess passengers but

4  was intimidated to acquiesce by threats levied by Plaintiff

5  Perez), this Court under no circumstances can find as a matter of

6  law that Vezer owed a duty to ensure the safety of what may well

7  have been a personal frolic, as opposed to anything occurring

8  within the course of scope of any employment relationship with

9  Vezer.[4]  Nor can the Court determine unequivocally, as it must in

10 order to grant summary adjudication as to the negligence-based

11 claims and that the allegedly unauthorized trip and its

12 consequences should have been foreseeable to Vezer.

13 Additionally, the fact that the Court cannot determine as a

14 matter of law that J.J. Ocon was a special employee of Vezer

15 makes it even more tenuous that Vezer could possibly be found

16 responsible for any negligence on Ocon's part.  Certainly the

17 claims for negligent retention, hiring, training and supervision

18 would appear to presuppose a determination of special employment

19 that the Court has already indicated it cannot make.  See, e.g.,

20 Mendoza v. City of Los Angeles, 66 Cal. App. 4th 1333, 1339-40

21 (1998) (liability for negligent hiring and supervision predicated

22 on an employment relationship).

23 ///

24 ///

25

26      [4] While the Court recognizes that Plaintiffs have argued
   that Vezer knew or should have known that the Aubert drivers
27 transported its workers for personal reasons, and often did so
   after the applicable curfew, those allegations also remain in
28 dispute.

14

Summary adjudication is therefore denied as to all requests made by both parties directed to the specific claims made by Plaintiffs' lawsuit.

## C.  Exclusive Remedy of Worker's Compensation

By claiming that both Plaintiffs' injuries occurred within the course and scope of their special employment with Vezer, Vezer argues that the injury claims being asserted are precluded by the exclusive remedy of worker's compensation.  On its face, this presupposes a finding that Plaintiffs' injuries were in fact sustained during the course and scope of their employment, a determination the Court has already stated it cannot make as a matter of law given the conflicting evidence.

With respect to Plaintiff Moore, even aside from this Court's own assessment of course and scope as set forth above, Vezer argues that Moore should be precluded from arguing that he was not a special employee inasmuch as he received worker's compensation benefits.  Vezer asks the Court to judicially notice, under Federal Rule of Evidence 201, the worker's compensation decision attached as Exhibit "A" to the Declaration of Melody Cook.  That request is denied.  Judicial notice under Rule 201 applies either to generally known facts or self-evident truths that neither side can reasonably question.  Here, where conflicting evidence is undisputedly present, judicial notice would be improper.  See, e.g., Hardy v. Johns-Manville Sales Corp., 681 F.2d 334, 347-48 (5th Cir. 1982).

///

15

"As a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it." <u>M/V Am. Queen v. San Diego Marine Constr. Corp.</u>, 708 F.2d 1483, 1491 (9th Cir. 1983).

Even were the Court to judicially notice the worker's compensation ruling, which found that Moore's injuries occurred during the course and scope of his employment, judicial estoppel as urged by Vezer (precluding Moore from taking a different position here in that respect) would still not be indicated. Inconsistent statements in this regard made during administrative proceedings for worker's compensation or disability benefits should merely be factored in with other evidence in making a final decision. <u>See</u>, <u>e.g.</u>, <u>Stoll v. The Hartford</u>, 2006 WL 3955826 at *11 (S.D. Cal. 2006). As the <u>Stoll</u> court noted, "[t]his rule is considered good public policy because it does not force plaintiffs to choose between the short-term receipt of disability benefits to relieve financial stress and the long-term vindication of statutory rights." <u>Id.</u> at *12. Moreover, in terms of this particular case, the issue of course and scope was apparently not rebutted or challenged by the worker's compensation carrier, and Vezer was not a party to the proceeding in any event, it being between Moore and the employment agency. This also mitigates against any finding that the worker's compensation proceeding should in any way be binding on the parties to this proceeding.

///

///

16

**CONCLUSION**

Based on all the foregoing, Plaintiffs' Motion for Summary Judgment (ECF No. 164) as well as Defendant Vezer's Motions for Summary Judgment as to both Ruben Perez and Michael Moore (ECF Nos. 150 and 154, respectively), are DENIED.  Defendant Vezer's request for summary adjudication as to its special employment status with both Perez and Moore is GRANTED, but all other requests for summary adjudication made by either side are DENIED.[5]

IT IS SO ORDERED.

Dated: September 26, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[5] The Court recognizes that Vezer has posed various objections to the evidence proferred by Plaintiff Perez and Moore in their respective oppositions to Vezer's motions.  Since the Court did not rely on the objected-to evidence in formulating its decision on Vezer's motion, it need not rule on the propriety of the objections and declines to do so.

17